IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: RS FIT NW LLC,[1] | : | Chapter 11 |
| Debtor. | : | Bankr. No. 20-11568 (KBO) |
| 24 HOUR FITNESS WORLDWIDE, INC., | : | Adv. No. 20-51051 (TMH) |
| Plaintiff, | : | |
| v. | : | |
| CONTINENTAL CASUALTY COMPANY, *et al.*, | : | Civ. No. 24-1201 (GBW) |
| | : | Misc. No. 24-574 (GBW) |
| Defendants. | : | |

**MEMORANDUM OPINION**

The following dispute arises in the chapter 11 cases of 24 Hour Fitness Worldwide, Inc. and certain affiliates (the "Debtors," and together, the "Plaintiff"). Before the Court is the motion (Civ. No. 24-1201-GBW, D.I. 1, 2) ("Renewed Motion for Withdrawal of the Reference") of Allied World National Assurance Company ("Defendant"), defendant in the above-captioned adversary proceeding (the "Insurance Action")[2] currently pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), seeking an order withdrawing the reference for cause pursuant to 28 U.S.C. § 157(d).

Plaintiff filed a complaint against various insurers seeking a declaratory judgment that certain business interruption and/or other losses suffered by Plaintiff and allegedly occurring as a result of the COVID-19 global pandemic are covered by various insurance policies. Based on a

---

[1] The docket of the remaining chapter 11 case is captioned *In re RS FIT NW LLC*, No. 20-11568-KBO (Bankr. D. Del.). By Order dated March 16, 2021, the chapter 11 cases of RS FIT NW LLC's affiliated debtors were closed. (Bankr. D.I. 1782, ¶¶ 2, 3.) RS FIT NW LLC is the sole remaining reorganized debtor in the chapter 11 cases. The docket of the lead case, Bankr. 20-11558-KBO, is cited herein as "Bankr. D.I. __."

[2] The docket of the Insurance Action, captioned *24 Hour Fitness Worldwide, Inc. v. Continental Casualty Co. et al.*, Adv. No. 20-51051 (TMH), is cited herein as "Adv. D.I. __."

1

settlement between Plaintiff and numerous insurer-defendants, Plaintiff's claim against Defendant under a certain policy issued by Defendant is the sole remaining claim at issue in the Insurance Action. The Bankruptcy Court has determined that the Insurance Action is a non-core matter within the meaning of 28 U.S.C. § 157(b), overseen discovery regarding the issue of liability and coverage, and denied Defendants' motion for summary judgment (Adv. D.I. 320) (the "Summary Judgment Order") on the basis that there are significant issues of material fact that must be determined at trial. Defendant, having demanded a jury trial, argues that cause now exists to withdraw the reference of this matter so that the Insurance Action may proceed to a jury trial in this Court.

Plaintiff opposes the Renewed Motion for Withdrawal of the Reference on the basis, *inter alia*, that Defendant's Motion for Leave (Misc. No. 24-574-GBW, D.I. 1) (the "Motion for Interlocutory Appeal"), which seeks leave to file an interlocutory appeal of the Summary Judgment Order, remains unresolved and forecloses withdrawal of the reference at this time. "Until the appellate process initiated by [Defendant] has run its course, the requirements for withdrawal of the reference simply cannot be met." (Civ. No. 24-1201-GBW, D.I. 6 at 1.)

For the reasons set forth herein, Defendant's Motion for Interlocutory Appeal will be denied. As the Insurance Action is ready for trial, Defendant's Renewed Motion for Withdrawal of the Reference will be granted.

I.  **BACKGROUND**

A.  **The Parties**

Prior to the chapter 11 cases, the Debtors were one of the nation's leading operators of health and fitness clubs, serving approximately 3.4 million members in 445 locations across the United States. (*See* Bankr. No. 20-11558-KBO, D.I. 4 (Hugo Declaration in Support of Chapter 11 Petitions) ¶ 8.) The insurer-defendants, including Defendant (collectively, the "Property

2

Insurers") issued certain property policies (the "Property Policies") providing coverage to Plaintiff for the period from June 30, 2019 through June 30, 2020, subject to the terms, conditions, limitations, and exclusions set forth therein. Defendant also issued a certain policy (the "Pollution Policy") which provides Plaintiff with coverage for the period from September 3, 2017 to September 3, 2020 subject to the terms, conditions, limitations, and exclusions set forth therein.

**B.     The Chapter 11 Cases**

On June 15, 2020, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. At that time, Debtors' business was reeling from the effects of the global COVID-19 pandemic, which forced the shutdown of many of its locations. On December 22, 2020, the Bankruptcy Court confirmed the Debtors' joint plan of reorganization (Bankr. D.I. 1508) (the "Plan"). The Plan became effective on December 29, 2020. (Bankr. D.I. 1551.) Pursuant to the Plan, the Debtors' causes of action, including the state law claim asserted in the Insurance Action, were retained by the Reorganized Debtors. (Bankr. D.I. 1508-1 at Art. I § A.13, A.113, A.148, A.156; Art. IV § J; Art. VII § B; Bankr. D.I. 1301-3 at 3 ¶ 2.)

**C.     The Nature and Stage of the Insurance Action**

When Plaintiff filed claims with its insurers, certain of the insurer-defendants denied coverage and others responded with reservations of rights. Plaintiff commenced the Insurance Action on December 21, 2020, by filing a Complaint for Declaratory Relief (Adv. D.I. 1) (the "Complaint") to obtain a declaration that the policies purchased from the insurer-defendants provide coverage for certain of Plaintiff's losses related to the global COVID-19 pandemic. As relevant here, the Complaint sought a declaratory judgment that certain losses suffered by Plaintiff are covered by (i) the Property Policies issued by the Property Insurers and (ii) a "Scheduled Location Pollution Liability Policy" (the "Pollution Policy") issued by Defendant.

On or about February 18, 2021, Defendant filed its answer. (Adv. D.I. 56.) On March 19, 2021, the Bankruptcy Court entered an Order determining that the Insurance Action is a "non-core proceeding." (Adv. D.I. 68.) On June 21, 2021, the insurer-defendants (including Defendant) jointly filed a motion (the "Initial Motion") requesting that this Court withdraw the reference of the Insurance Action. (*See* Adv. D.I. 89.) By Memorandum Order dated January 6, 2022, this Court denied the Initial Motion without prejudice on the basis that "there [was] no reason why the Bankruptcy Court may not preside over [the Insurance Action] and adjudicate discovery disputes and motions only until such time as the case is ready for trial." (Adv. D.I. 119 at 9.)

The parties entered into a Stipulated Scheduling Order (Adv. D.I. 66-1) (as amended, the "Scheduling Order") to govern the completion of discovery, trial, and the filing of certain motions, including any motion to withdraw the reference. Pursuant to the Scheduling Order, the Bankruptcy Court bifurcated the Insurance Action into two phases: "Phase I", which is limited to the issue of liability and insurance coverage, and "Phase II", which is limited to determine the amount of Plaintiff's monetary losses. The Scheduling Order indicates that any trial on Phase I will take place before Phase II begins. (*Id.* ¶¶ 11, 12.) The Scheduling Order was later amended several times. Among other things, Plaintiff and Defendants agreed that any renewal of the request that this Court withdraw the reference of the Insurance Action would occur at a time "on or before a date that is 14 Days following the [Bankruptcy] Court's entry of an order with respect to any dispositive motions." (Adv. D.I. 247-1.) Fact and expert discovery on Phase I closed on November 1, 2023.

On November 10, 2023, Defendant filed a motion for summary judgment (Adv. D.I. 239) (the "Summary Judgment Motion") as to Plaintiff's claim for coverage under the Pollution Policy ("Pollution Policy Claim").

On October 4, 2024, Plaintiff and the Property Insurers (including Defendant) reached a settlement in principle to resolve Plaintiff's claims related to the Property Policies (the "Settlement") and eventually filed a Stipulation of Dismissal in connection with the Settlement. (Adv. D.I. 350.)

On October 8, 2024, the Bankruptcy Court held oral argument on Defendant's Motion for Summary Judgment as to the Pollution Policy Claim. (Adv. D.I. 321 ("10/8/2024 Tr.").) During oral argument, Plaintiff's counsel indicated that there should be a jury trial on the Pollution Policy Claim. (*Id.* at 19:12-20; 20:16-18.) Following oral argument, the Bankruptcy Court agreed that there should be a jury trial on the Pollution Policy Claim, explaining that "there are two significant issues [of] material fact that have to be determined at trial," including "whether the virus was present" and "why the decision was made [by Plaintiff] to close [its gyms]." (*Id.* at 27:2-25.) On October 8, 2024, the Bankruptcy Court issued the Summary Judgment Order denying Defendant's Summary Judgment Motion.

The Settlement and the Summary Judgment Order left the Pollution Policy Claim as the sole remaining claim at issue in the Insurance Action. Plaintiff subsequently filed a letter request asking the Bankruptcy Court to further modify the Scheduling Order to consolidate Phase I and Phase II of the Insurance Action so that discovery and motion practice may proceed with respect to Plaintiff's damages in the Bankruptcy Court (Adv. D.I. 336) (the "Modification Request"). Defendant opposed the Modification Request (Adv. D.I. 337). On December 4, 2024, the Bankruptcy Court held a status conference in the Insurance Action (Adv. D.I. 343) ("12/4/2024 Tr.") to address the Modification Request. The Bankruptcy Court denied the Modification Request, explaining:

> It strikes me ... that [Defendant] has been working with this scheduling order for forty-five months, almost three years, with a pretty clear set of expectations that was agreed to among the parties about how to proceed. And I'll confess, I'm struggling a bit with the

5

> idea of opening up, which really would be a completely new phase of discovery. New lines of inquiry. You said conducting discovery this month. I don't think you're getting it done in the next twenty-seven days.

(*Id.* at 8:1-9.) The Bankruptcy Court further explained:

> Well, the issue about there being two phases, I mean, that was something that was agreed to four years ago. It didn't suddenly occur to you that it would be somehow more efficient to do it in one phase when you've been proceeding on a consensual basis on a bifurcated schedule for four years. Look, I'm going to – I'm going to deny the request. The parties have been operating under this schedule for almost four years. You're past the summary judgment stage. ***I understand that [Defendant] has filed a motion to have an interlocutory appeal of my decision denying summary judgment. But otherwise, this appears to me to be just about ready for trial.*** And the district court will decide whether they're doing that or I'm doing that or when it's going to happen. But I think it would cause major disruption to restart discovery. This has been hanging out there for four years. It's time to – it's time to deal with this. And I do think that [Defendant] would be prejudiced by, after having agreed to do this on a bifurcated basis, to have to go ahead and open up discovery on damages, when the parties agreed at the outset that you're only going to deal with damages if there is liability. You may never have to deal with damages. I don't know what's going to happen at trial. So I don't think it's appropriate to disrupt those expectations this late in the game. I'm just not going to approve it.

(*Id.* at 13:8-14:7 (emphasis added).)

**D.    The Pending Motions**

On October 28, 2024, Defendant filed its Renewed Motion for Withdrawal of the Reference. On November 12, 2024, Defendant filed its Notice of Appeal together with its Motion for Interlocutory Appeal of the Summary Judgment Order.

Defendant's Renewed Motion for Withdrawal of the Reference is fully briefed. (Civ. No. 24-1201-GBW, D.I. 1, 2, 6, 12, 13, 14, 18.) Defendant's Motion for Interlocutory Appeal is also fully briefed. (Misc. No. 24-574-GBW, D.I. 1, 8, 9, 13.) The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## II.    JURISDICTION

The Summary Judgment Order is interlocutory. This Court has jurisdiction to hear appeals, with leave of the court, from "interlocutory orders and decrees" of the Bankruptcy Court. 28 U.S.C. § 158(a)(3). Section 158(a) does not identify the standard district courts should use in deciding whether to grant such an interlocutory appeal. "Typically, however, district courts follow the standards set forth under 28 U.S.C. § 1292(b), which govern interlocutory appeals from a district court to a court of appeals." *In re AE Liquidation, Inc.*, 451 B.R. 343, 346 (D. Del. 2011).

Under the standards of § 1292(b), an interlocutory appeal is permitted only when the order at issue (1) involves a controlling question of law upon which there is (2) substantial ground for difference of opinion as to its correctness, and (3) if appealed immediately, may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974).

Interlocutory appeals are "the exception, not the rule." *Johnson v. Jones*, 515 U.S. 304, 309 (1995); *In re Processed Egg Prod. Antitrust Litig.*, 2017 WL 4416203, at *1 (E.D. Pa. Sept. 29, 2017). Entertaining review of an interlocutory order under § 1292(b) is appropriate only when the party seeking leave to appeal "establishes exceptional circumstances [to] justify a departure from the basic policy of postponing review until after the entry of final judgment." *In re Del. and Hudson Ry. Co.*, 96 B.R. 469, 472-73 (D. Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir. 1989). In part, this stems from the fact that "[p]iecemeal litigation is generally disfavored by the Third Circuit." *In re SemCrude, L.P.*, 2010 WL 4537921, at *2 (D. Del. Oct. 26, 2010) (citing *In re White Beauty View, Inc.*, 841 F.2d 524, 526 (3d Cir. 1988)). Further, leave for interlocutory appeal may be denied for "entirely unrelated reasons such as the state of the appellate docket or the desire to have a full record before considering the disputed legal issue." *Katz*, 496 F.2d at 754.

## III.     ANALYSIS

### A.     Questions Presented for Appeal

Defendant seeks leave to challenge the Summary Judgment Order, which denied Defendant's Summary Judgment Motion on the Pollution Policy Claim. Relevant here, Defendant asserts, Plaintiff bears the burden of proof to show that its loss falls within the terms of the Pollution Policy, which provides that Defendant "will pay business interruption costs resulting from business interruption caused solely and directly by a pollution incident on, at or under a scheduled location." (Adv. D.I. 1, Complaint ¶ 69; Adv. D.I. 236-3, Supp. Appendix AW0060, Pollution Policy at p. 3 of 17.) Defendant argued that Plaintiff could not meet its burden to show that its business interruption losses were caused "solely and directly" by the presence of a virus (COVID-19) at the facilities because Plaintiff admitted that it "closed its facilities in whole or in part in order to comply with orders of the federal, state, county or municipal governments." (Adv. D.I. 239 at 24.) Plaintiff disputed Defendant's assertion that Plaintiff decided to close its clubs only to comply with government orders. Plaintiff asserted that it had submitted 3,000 pages of evidence concerning the presence of COVID-19 at its facilities and its decisions to close its clubs. (*See* Adv D.I. 258.) Plaintiff asserted that its evidence included deposition testimony from Plaintiff's then CEO, Tony Ueber, explaining that Plaintiff decided to close its clubs on March 15, 2020, before any government orders were issued, to "ensure the safety of our members and team members from COVID." (*See* Adv. D.I. 258-184.)

The Bankruptcy Court ruled that there were "two significant issues [of] material fact that have to be determined at trial." (10/8/2024 Tr. at 27:3-18.) First, the Bankruptcy Court held that a "trier of fact" should determine "whether the virus was present" at Plaintiff's properties. (*Id.*) Second, the Bankruptcy Court held that there was a "genuine issue of material fact" concerning why Plaintiff decided to close its properties—whether it was "independent of the shutdown orders"

8

or "was it for another reason, namely whether the virus was present in the clubs." (*Id.*) Based on these genuine factual disputes, the Bankruptcy Court issued the Summary Judgment Order denying Defendant's Summary Judgment Motion.

The Bankruptcy Court erred, Defendant asserts, because "it is *impossible* for [Plaintiff] to meet its burden of proof." (Misc. No. 24-574-GBW, D.I. 1 at 2.) "Plaintiff admits that it closed its facilities, not *solely* or *directly* due to the supposed actual presence of COVID-19 at its facilities, but because of governmental orders which required gyms across the country to close—and to remain closed—to prevent community spread of the virus." (*Id.*) "Because [Plaintiff] admits that one of the reasons (if not the primary reason) it closed its facilities was to comply with governmental orders, the closures of [Plaintiff's] facilities cannot be 'solely' or 'directly' due to the presence of COVID-19 at its facilities." (*Id.*) Defendant asserts the following two issues are questions of law suitable for interlocutory appeal:

> Issue #1: Whether the Bankruptcy Court erred in finding a genuine dispute of material fact concerning the reason Plaintiff closed its facilities, including whether the Bankruptcy Court erred by (a) ignoring factual admissions made by Plaintiff's 30(b)(6) witness, (b) ignoring factual admissions made in the Complaint, or (c) considering Plaintiff's counsel's assertion at oral argument that the record contained testimony supporting Plaintiff's assertion that it decided to close its facilities on March 15, 2020 "before any governmental orders were issued" despite that (i) this new factual assertion was inconsistent Plaintiff's 30(b)(6) witness and admissions in the Complaint; and (ii) the testimony cited did not support this assertion.
>
> Issue #2: Whether the Bankruptcy Court erred by failing to apply the plain meaning of the words "solely" and "directly" to assess whether a triable issue of fact existed.

(*See* Misc. No. 24-574-GBW, D.I. 1 at 9-10.)

B. **Leave to Appeal the Interlocutory Summary Judgment Order Is Not Warranted**

1. **There Is No Controlling Question of Law at Issue**

The Motion for Interlocutory Appeal is based solely upon the Bankruptcy Court purportedly "ignoring" certain "factual admissions" made by Plaintiff—which are not controlling questions of law sufficient to warrant interlocutory review. (Misc. No. 24-547-GBW, D.I. 1 at 10.) A "controlling question of law" subject to interlocutory review is one that is "serious to the conduct of the litigation, either practically or legally," which encompasses "order[s] which, if erroneous, would be reversible error on final appeal." *In re Physiotherapy Holdings*, 2017 WL 6524524, at *6 (D. Del. Dec. 21, 2017). A controlling question of law "must be one that the reviewing court could decide quickly and cleanly *without having to study the record.*" *In re Quorum Health Corp.*, 2024 WL 2271892, at *4 (D. Del. May 20, 2024) (emphasis added). Indeed, "inherently factual issues" that are "decided based upon the record submitted by the parties" are "not issues of law" and are "not an appropriate basis for an interlocutory appeal." *In re Frascella Enters.*, 388 B.R. 619, 623-24 (Bankr. E.D. Pa. 2008); *see also In re AE Liquidation, Inc.*, 451 B.R. at 347 (denying request for interlocutory appeal because the questions presented would "necessarily" require the court to "engage in a sufficiently detailed study of the facts and the record to ultimately determine the outcome of the appeal"); *In re SemCrude, L.P.*, 2010 WL 4537921, at *3 (denying request for interlocutory appeal because the purported legal question involved a "fact-intensive inquiry"). Here, both issues presented by Defendant concern questions of fact, not questions of law.

With respect to the first issue, Defendant seeks interlocutory review of whether the Bankruptcy Court erred by denying its request for summary judgment "on the grounds that there was a genuine dispute of material fact concerning the reason [Plaintiff] closed its facilities." (Misc. No. 24-574-GBW, D.I. 1 at 9.) The issues Defendant identifies for appeal are all "inherently

factual" and, therefore, do not meet this Court's standards for interlocutory review. *Frascella Enters.*, 388 B.R. at 623-24; *see also Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 96 (2d Cir. 2004) ("By its plain terms, Section 1292(b) may only be used to challenge legal determinations"). For example, Defendant identifies three "factual admissions" or "factual assertions" that it contends the Bankruptcy Court "ignored," including (1) "factual admissions made by [Plaintiff's] 30(b)(6) witness," Dan Larson, including that "[g]overnment-related requirements were part of the decision-making process" in closing all of 24 Hour's then open fitness centers by midnight on March 16, 2020; (2) "factual admissions made by [Plaintiff] in its complaint" including that "it had no choice but to close all of its club locations … and was required to keep its club locations closed due to various governmental orders" (Complaint, ¶ 40); and (3) certain factual arguments made by Plaintiff's counsel during oral argument on the Summary Judgment Motion, including that witness testimony supported Plaintiff's argument that it made the decision to shut down its properties prior to the issuance of government shut down orders. (*See* Misc. No. 24-574-GBW, D.I. 1 at 10.) But the Bankruptcy Court determined that genuine disputes of material fact remained, because of or notwithstanding these statements and admissions, "based upon the record submitted by the parties" and those issues are "not an appropriate basis for an interlocutory appeal." *Frascella Enters.*, 388 B.R. at 623-24.

As Plaintiff correctly argues, even assuming these issues were legal in nature, there is no way to resolve such issues without a careful examination of the underlying record and evidence. *In re Quorum Health Corp.*, 2024 WL 2271892, at *4 (holding that a controlling question of law "must be one that the reviewing court could decide quickly and cleanly without having to study the record"); *Ahrenholz v. Bd. of Trs.*, 219 F.3d 674, 677 (7th Cir. 2000) (same). Here, a careful study of the underlying record would be necessary to resolve Defendant's purportedly appealable issues because, rather than cite any controlling law in support of its Motion for Interlocutory

11

Appeal, Defendant relies primarily on the parties' evidence and arguments in support of its request for summary judgment. (D.I. 1 at 12-17.) Such a "fact-intensive" inquiry is not appropriate for an interlocutory appeal. *In re SemCrude, L.P.*, 2010 WL 4537921, at *3.

Finally, there is no basis to support Defendant's claim that the Bankruptcy Court "ignored" any of the purported factual admissions or assertions that Defendant seeks to raise on appeal. Rather, each of these factual issues were thoroughly discussed in the parties' respective summary judgment briefs. The Bankruptcy Court acknowledged at oral argument that it had "very carefully" considered all the factual and legal issues and even complimented the parties that their "briefing was extremely well done." (*See* 10/8/24 Tr. at 27-28.)

With respect to the second issue, Defendant seeks interlocutory review of whether the Bankruptcy Court erred by failing to consider whether "[Plaintiff] closed its facilities 'solely' and 'directly' as a result of the presence of COVID-19 at its facilities." (Misc. No. 24-574-GBW, D.I. 1 at 16 ("The legal question that the Bankruptcy Court should have considered in deciding [Defendant's] motion for summary judgment was whether [Plaintiff] closed its facilities 'solely' and 'directly' as a result of the presence of COVID-19 at its facilities").

Whether Plaintiff closed its facilities "solely" and "directly" because of the presence of COVID-19 at its properties is "inherently factual" and does not meet the standard for interlocutory review. *Frascella Enters.*, 388 B.R. at 623-24. The summary judgment record contains competing evidence and argument from the parties regarding the presence of COVID-19 and Plaintiff's decisions to close its clubs. Indeed, at the summary judgment hearing, Defendant argued that Plaintiff's alleged losses were "not solely and directly due to the presence of COVID" at its properties. (*See* 10/8/2024 Tr. at 5.) Notwithstanding such arguments, based on the voluminous evidentiary record submitted by the parties, the Bankruptcy Court found "two significant issues" of "material fact" would "have to be determined at trial," including (1) whether COVID was

present at Plaintiff's properties and (2) why Plaintiff decided to close its properties. (*Id.* at 28.) In other words, the Bankruptcy Court determined that a "trier of fact" should resolve these issues and did not make *any rulings*—adverse to Defendant or otherwise—regarding why or how Plaintiff closed its properties. (*Id.*)

And again, even if this issue were legal in nature, there is no way this Court can resolve whether "[Plaintiff] closed its facilities 'solely' and 'directly' as a result of the presence of COVID-19 at its facilities" without a careful examination of the underlying record and evidence. (Misc. No. 24-574-GBW, D.I. 1 at 16.) This is fatal to Defendant's request for interlocutory review. In sum, Defendant has failed to identify any controlling question of law.

### 2. There Are No Substantial Grounds for a Difference of Opinion

Additionally, Defendant has not shown that there are substantial grounds for a difference of opinion concerning the correctness of the Bankruptcy Court's Summary Judgment Order. This "calls for more than mere disagreement with the ruling of the bankruptcy court." *Quorum Health*, 2024 WL 2271892 at *4. Rather, a party seeking interlocutory review must show "genuine doubt as to the correct legal standard," an "absence of controlling law" or that "the bankruptcy court's decision is contrary to well-established law." *Id.* (internal quotations and citations omitted).

The issues presented by Defendant for interlocutory appeal arise not from any genuine doubt as to the correct legal standard, and Defendant has not cited any decision that conflicts with the Bankruptcy Court's rulings. Defendant cites *Rainey*, *Judon*, and *Glick* (*see* Misc. No. 24-574-GBW, D.I. 1 at 18),[3] each of which concern the undisputed concept that a party's Rule 30(b)(6)

---

[3] *See Rainey v. American Forest & Paper Ass'n, Inc.*, 26 F.Supp.2d 82 (D. D.C. 1998); *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495 (3d Cir. 2014); *Glick v. White Motor Co.*, 458 F.2d 1287 (3d Cir. 1972).

13

witness speaks for the corporation. Defendant also cites *Azur*, *Sullivan*, and *Mirror* (*see id.* at 18),[4] which concern undisputed standards for summary judgment. There is no dispute as to these legal standards. None of the cases cited by Defendant call into question the correctness of the Bankruptcy Court's holding that, having applied these standards, there is competing evidence, and there remain at least two genuine issues of material fact to be resolved at trial.

At most, Defendant expresses disagreement over the Bankruptcy Court's application of law "to the particular facts before it," which "does not constitute the requisite substantial grounds for difference of opinion." *In re Maxus Energy Corp.*, 2021 WL 4427006, at *5 (D. Del. Sept. 27, 2021); *Liberty Salad, Inc. v. Groundhog Enters., Inc.*, 2019 WL 1303829, at *3 (E.D. Pa. Mar. 20, 2019) ("The term 'question of law' does not mean the application of law to fact. Instead, it is an abstract legal issue or 'pure' question of law—matters that the court of appeals 'can decide quickly and cleanly without having to study the record.'"); *see also P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 355, 359 (D.N.J. 2001) (denying certification where moving party raised "nothing more than a disagreement with th[e] Court's application of the governing standard").

### 3. Materially Advancing the Ultimate Termination of the Litigation

"An interlocutory appeal 'materially advances' the litigation if it '(1) eliminates the need for trial, (2) eliminates complex issues so as to simplify the trial, or (3) eliminates issues to make discovery easier and less costly.'" *Quorum Health*, 2024 WL 2271892, at *6 (quoting *In re Paragon Offshore PLC*, 2020 WL 1815550, at *3 (D. Del. Apr. 9, 2020)). Defendant is correct that if the Summary Judgment Order is reversed and remanded, and the Bankruptcy Court,

---

[4] *See Azur v. Chase Bank, USA, Nat. Ass'n*, 601 F.3d 212 (3d Cir. 2010); *Sullivan v. Warminster Twp.*, 765 F. Supp. 2d 687 (E.D. Pa. 2011); *Mirror Worlds, LLC v. Apple, Inc.*, 692 F.3d 1351 (Fed. Cir. 2012).

applying the agreed standards, reaches an entirely different conclusion with respect to the evidence in the record, trial on Phase I (liability under the Pollution Policy) may be rendered unnecessary.

4. **Exceptional Circumstances Are Absent**

Defendant must also "establish exceptional circumstances [to] justify a departure from the basic policy of postponing review until after the entry of final judgment." *In re Del. and Hudson Ry. Co.*, 96 B.R. 469, 472-73 (D. Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir. 1989); *see also In re Essar Steel Minn.*, 607 B.R. at 418 ("Because an interlocutory appeal represents a deviation from the basic judicial policy of deferring review until after the entry of final judgment, the party seeking leave to appeal an interlocutory order *must* also demonstrate that exceptional circumstances exist.") (emphasis added).

Defendant argues that, based on "the unique nature of the dispute, the amount in controversy, and the division of the [Insurance Action] into Phase I and Phase II … an immediate appeal of the Bankruptcy Court's erroneous Order would be beneficial to resolving the Pollution Policy Claim in a prompt and orderly fashion." (Misc. No. 24-574-GBW, D.I. 1 at 20.)

The parties' agreement to bifurcate the issues for trial undoubtedly added efficiency and potentially saved judicial resources. The bifurcation is not undermined by denial of the Motion for Interlocutory Appeal and does not create an exceptional circumstance. Indeed, Discovery on Phase I is complete, and there is nothing left to do but try the case with respect to the Phase I issues. It makes little sense for this Court to review the Bankruptcy Court's decision, including its analysis of the summary judgment record and, if the Court agrees with Defendant, return the case to the Bankruptcy Court so that it can revisit its summary judgment decision and consider Defendants' arguments and evidence again. Moreover, Defendant offers no basis to believe that the Bankruptcy Court would change its determination that evidence regarding these disputes of

material fact must be heard by a jury, as the standard applied by the Bankruptcy Court at summary judgment is the same standard cited by Defendant. (*See* Misc. No. 24-574-GBW, D.I. 1 at 18.)

In sum, Defendant's desire to relitigate an adverse summary judgment ruling is not appropriate for an interlocutory appeal.

### B.   Withdrawal of the Reference Is Required

District courts "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Pursuant to the authority granted by 28 U.S.C. § 157(a), this Court has referred all cases arising under title 11 to the Bankruptcy Court. *See* Am. Standing Order of Reference, Feb. 29, 2012 (C.J. Sleet). Nevertheless, Congress specified that in certain circumstances district courts are authorized to withdraw the reference to the bankruptcy courts and adjudicate disputes directly. *See* 28 U.S.C. § 157(d). Relevant here, section 157(d) provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.

28 U.S.C. § 157(d). Although the statute does not define "cause shown," the Third Circuit has set forth several factors that may be considered in determining whether cause exists to withdraw the reference: promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, expediting the bankruptcy process, and the timing of the request for withdrawal. *See In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990) (discussing non-exhaustive list of factors). Other factors considered by courts analyzing whether withdrawal is appropriate are whether the claim is a core bankruptcy proceeding or whether it is non-core, and whether the parties have requested a jury trial. *In re NDEP Corp.*, 203 B.R. 905, 908 (D. Del. 1996) (citations omitted). A proceeding is "core" if it invokes a

substantive right provided by the Bankruptcy Code or if could only arise in the context of a bankruptcy case. *See Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999).

Plaintiff argues that the Renewed Motion for Withdrawal of the Reference is premature and must be denied at this juncture for two independent reasons: Defendant's pending Motion for Interlocutory Appeal of the Summary Judgment Order forecloses withdrawal of the reference because the proceeding is not "trial ready;" and (2) based on the Settlement with other insurer-defendants, it no longer makes practical sense to proceed with the bifurcated process; rather, the Scheduling Order should be modified to combine Phase I and II of the litigation so that Plaintiff may conduct a single trial against Defendant after completing further discovery on its alleged damages. (*See* Civ. No. 24-1201-GBW, D.I. 6 at 1-2; Misc. No. 24-574-GBW, D.I. 8 at 1-2 n.3.)

It is the general practice of this Court to withdraw the reference at "such time as the matter is ready for trial." *In re 24 Hour Fitness Worldwide, Inc.*, 2022 WL 605661, at *3 (D. Del. Jan. 4, 2022). Defendant has met its burden of demonstrating that cause exists at this time to warrant permissive withdrawal. *See In re Liberty State Benefits of Delaware Inc.*, 2015 WL 1137591 at *2 (D. Del. Mar. 12, 2015) ("As the moving party, [movant] has the burden to prove that cause exists to withdraw the reference." (citation omitted)). The Bankruptcy Court has already determined that the Insurance Action is a non-core proceeding. (Adv. D.I. 68.) Plaintiff does not dispute that the Insurance Action is non-core. (*See* Civ. No. 24-1201-GBW, D.I. 6 at 9-11.) As the Motion for Interlocutory Appeal will be denied, Plaintiff is not prejudiced by the timing of the withdrawal. And since the parties' briefing on this matter, the Bankruptcy Court has denied Plaintiff's request to modify the Scheduling Order. Accordingly, there is no need to delay withdrawal of the reference based on the bifurcation issue. Additionally, pre-trial matters, including discovery on Phase I and dispositive motions, are now complete, and as Plaintiff comes close to conceding, the Insurance Action is trial ready. (*See* Misc. No. 24-574-GBW, D.I. 8 at 1-

2 n.3 ("Given the Bankruptcy Court's determination regarding the scheduling order, [Plaintiff] is meeting and conferring with [Defendant] to potentially withdraw its Opposition because [Plaintiff's] claims against [Defendant] arising under the Pollution Policy may now be ready for a Phase I trial.") Finally, Plaintiff's arguments—that withdrawal of the reference now (*i.e.,* the time agreed to by the parties, Adv. D.I. 247-1) is somehow suspect, may encourage forum shopping, or undermine judicial economy—are unavailing. To the extent that the Plaintiff prevails in Phase I of the litigation, this Court will oversee any discovery required for the Phase II trial on damages.

IV. **CONCLUSION**

Leave to appeal the interlocutory Summary Judgment Order is not warranted because the proposed appeal presents no controlling issue of law, nor has Defendant demonstrated any substantial ground for a difference of opinion as to the Bankruptcy Court's determination. Accordingly, the Court will deny the Motion for Interlocutory Appeal. Because the non-core Insurance Action is now trial ready, reference to the Bankruptcy Court must be withdrawn so that Phase I of the Insurance Action can proceed to a jury trial. Accordingly, the Court will grant the Renewed Motion for Withdrawal of the Reference. A separate Order will be entered.

_____
The Honorable Gregory B. Williams
UNITED STATES DISTRICT JUDGE

Date: May 1, 2025