IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: RS FIT NW LLC,<br><br>                    Debtor. | : Chapter 11<br>: Bankr. No. 20-11568 (TMH)<br>: (Jointly Administered)<br>: |
| 24 HOUR FITNESS WORLDWIDE, INC.,<br><br>                    Plaintiff,<br>   v.<br><br>ALLIED WORLD NATIONAL ASSURANCE COMPANY,<br><br>                  Defendant. | :<br>: Adv. No. 20-51051 (TMH)<br>:<br>:<br>:<br>:<br>: Civ. No. 24-1201 (GBW)<br>:<br>: |

## MEMORANDUM

### I. INTRODUCTION

This dispute arises in the chapter 11 cases of 24 Hour Fitness Worldwide, Inc. ("Plaintiff") and certain of its affiliates, and more specifically, from an adversary proceeding initiated by Plaintiff's complaint (Adv. D.I. 1) (the "Complaint")[1] against various insurers. Following this Court's withdrawal of the reference of the adversary proceeding for jury trial, and the setting of a trial date, Plaintiff filed a motion to amend the Complaint to add certain factual allegations and assert two new causes of action (D.I. 29) (the "Motion to Amend"). The Motion to Amend is fully briefed. (D.I. 30, 38, 40). Additionally, the parties filed a letter jointly requesting a teleconference regarding the Motion to Amend (D.I. 41) (the "Letter Request"). For the reasons set forth herein, the Motion to Amend will be granted in part and denied in part.

### II. BACKGROUND

Plaintiff filed the Complaint in December 2020 against various insurers seeking declaratory relief regarding insurance coverage for business interruption losses sustained by Plaintiff during the

---

[1] The docket of the adversary proceeding, captioned *RS Fit NW, LLC v. Allied World National Assurance Company*, Adv. No. 20-51051 (TMH) (Bankr. D. Del.), is cited herein as "Adv. D.I. __."

1

COVID epidemic. The docket reflects that the Bankruptcy Court has overseen years of pretrial matters, including discovery, pretrial and dispositive motions, and the approval of various settlements between Plaintiff and other insurers. The Bankruptcy Court denied Defendant's motion for summary judgment on the basis that there are significant issues of material fact that must be determined at trial. The action now consists of a sole remaining state law claim seeking "declaratory relief establishing that the losses [Plaintiff] has suffered are covered by the . . . Pollution Policy" issued by Defendant. (Complaint ¶ 75.)

Notably, the parties previously agreed, and the Bankruptcy Court ordered, that the trial would proceed in two phases: Phase I ("limited to the issue of liability and insurance coverage") and Phase II ("to determine the amount of Plaintiff's monetary losses, if any such determination shall then be appropriate"). (*See* Adv. D.I. 66, 66-1 (the "Phase I Scheduling Order")  The docket reflects that the Phase I Scheduling Order was amended several times with respect to Plaintiff's singular declaratory judgment claim.[2] Fact discovery on Phase I closed in October 2022. (Adv. D.I. 181, 196.) In November 2024, Plaintiff sought to unwind the bifurcated proceeding, informing the Bankruptcy Court it wished to amend its Complaint, obtain damages discovery, and consolidate Phase I and Phase II, so that discovery and motion practice may proceed with respect to Plaintiff's damages in the Bankruptcy Court. (*See* Adv. D.I. 336.) During the hearing on Plaintiff's request to modify the Phase I Scheduling Order, held on December 4, 2024, the Bankruptcy Court noted that the Defendant "has been working with this scheduling order for forty-five months, with a pretty clear set of expectations that was agreed to among the parties about how to proceed" and that the case was "just about ready for trial." (Adv. D.I. 343 at 8:1-9; 13:8-14:7.) The Bankruptcy Court further noted that the parties had been "proceeding on a consensual basis on a bifurcated schedule for four years" and found that

---

[2] *See* Adv. D.I. 66, 66-1, 111, 111-1, 129, 129-1, 156, 156-1, 172, 172-1, 181, 192, 196, 211, 211-1, 220, 220-1, 223, 228, 231, 231-1, 247, 247-1, 295, 295-1.

"Defendant would be prejudiced by ... open[ing] up discovery..." (*Id.* at 13:8-14:7.) The Bankruptcy Court concluded it was not "appropriate to disrupt those expectations this late in the game," and denied the motion to modify the Phase I Scheduling Order. (*Id.*)

Thereafter, Defendant moved to withdraw the reference of the adversary proceeding to allow it to proceed to the Phase I jury trial in this Court; in response, Plaintiff conceded that, in light of the Bankruptcy Court's denial of its request to modify the Phase I Scheduling Order, "[Plaintiff's] claims against [Defendant] arising under the Pollution Policy may now be ready for a Phase I trial." (Misc. No. 24-574-GBW, D.I. 8 at 1-2 n.3). On May 1, 2025, this Court issued a Memorandum Opinion and Order withdrawing the reference of the action so that it may proceed to jury trial. (D.I. 20, 21.) In its accompanying Memorandum Opinion, this Court preserved the bifurcated proceeding, noting that "pre-trial matters, including discovery on Phase I ... are now complete." (D.I. 20 at 17.) In accordance with the Scheduling Order (D.I. 26), as amended on August 20, 2025 (D.I. 42) (the "Current Scheduling Order"), the jury trial on the Phase I issue—"the issue of liability and insurance coverage"—is set to begin on August 17, 2026 and proceed for six full days, with a final pretrial conference set for July 23, 2026.

On July 25, 2025, Plaintiff filed the Motion to Amend, seeking leave to amend its Complaint. (*See* D.I. 29-3 ("First Amended Complaint"); D.I. 29-4 ("Blackline").) The Proposed First Amended Complaint would add, *inter alia,* two new causes of action against Defendant. (*See id.* at ¶¶ 53-76 (together, the "New Causes of Action"). The New Causes of Action are: (1) breach of contract, seeking monetary damages with the exact amount to be shown at trial (*id.* at ¶¶ 53-61) (the "Breach of Contract Action"); and (2) breach of the implied covenant of good faith and fair dealing, which asserts that "Defendant acted with the requisite intent to injure within the meaning of California Civil Code section 3294," and which seeks "damages, including without limitation, incidental and consequential damages flowing from Defendant's bad faith denials, attorneys' fees incurred by

3

Plaintiff pursuing coverage in light of Defendant's wrongful denial of Plaintiff's claim, pre-judgment interest, punitive damages, and such other relief as the Court deems appropriate," including punitive damages "in an amount sufficient to punish and deter similar conduct," which is "to be determined during Phase II of the trial" (*id.* ¶¶ 62-76) (the "Bad Faith Action").

### III.    PARTIES' CONTENTIONS

Plaintiff's overall contention is that the New Causes of Action "are reserved for Phase II and will not affect the Phase I trial." (D.I. 30 at 2.)   Regarding timeliness, Plaintiff argues that the Motion to Amend cannot be untimely as it is permitted under the Current Scheduling Order. (*See* D.I. 26 at ¶ 2 ("All motions to join other parties, and to amend or supplement the pleadings, shall be filed on or before July 25, 2025.")  Plaintiff further asserts that "[t]he amendments … reflect the case's posture, incorporate facts from discovery, and align with trial phasing." (D.I. 30 at 2.)  Plaintiff further contends that the proposed amendments "concern only Phase II and are moot unless Plaintiff succeeds in Phase I. Plaintiff's declaratory judgment claim—the sole subject of Phase I—remains unchanged." (D.I. 40 at 2.)

Defendant disagrees, noting that although discovery on Phase I is complete and the case is ready for trial, "Plaintiff seeks not only to add numerous new substantive factual allegations to its Complaint,"[3] but also "to add ***two entirely new claims*** and theories of liability." (D.I. 38 at 3.)  While

---

[3] *See* D.I. 38 at 3 (citing First Amended Complaint at ¶¶ 31, 33-34, 37-39, 43-45, 47) (the "New Factual Allegations"). The New Factual Allegations cited by Defendants include: ¶ 31 (adding contention that significantly more employees took sick time in early 2020, as compared to the same period in prior years, and that such data gives rise to "a reasonable inference … that the increase in sick time was at least partially attributable to COVID-19 in the communities where 24 Hour Fitness operated, and at least some of these sick individuals were at clubs while infected with the virus"); *id.* at ¶ 33 (adding contentions regarding the limitations on testing prior to April of 2020); *id.* at ¶¶ 33-34 (quoting Defendants' expert regarding factors contributing to rapid acceleration of transmission during March, including "introduction into facilities or settings prone to amplification," and adding contention that the spread of other viruses during that time included the symptoms which could not be distinguished from COVID without testing); *id.* at ¶¶ 37-39 (adding contentions regarding Plaintiff's belief as to presence of COVID-19 at its facilities in mid-March 2020); *id.* at ¶ 43 (adding contention that Plaintiff sought insurance coverage for health-related risks—including losses form

"Plaintiff glosses over its sweeping amendments, downplaying them as 'Phase II' claims," Defendant asserts that the "Court need only briefly review Plaintiff's blackline to see the sweeping and untimely amendments it proposes and which will fundamentally reshape this case." (*Id.*) "These new claims will require the factfinder to weigh evidence admitted at trial and decide whether it meets the distinct legal standards for those new claims—i.e., whether Allied is *liable*." (*Id.* at 3-4.) "By way of example," Defendant explains, "to prove liability for bad faith, Plaintiff must prove that Defendant acted unreasonably in its denial of the payment of policy benefits. *See Chateau Chamberay Homeowners Ass'n v. Assoc. Intern. Ins. Co.*, 90 Cal.App.4th 335, 347 (Ct. App. 2001). Proving bad faith "involves something beyond breach of the contractual duty itself … bad faith implies unfair dealing rather than mistaken judgment." *Id.* at 345 (citation omitted). This is distinct from Plaintiff's declaratory judgment action seeking "declaratory relief establishing that the losses it has suffered are covered by the … Pollution Policy." (Adv. D.I. 1 ¶ 75); *see also Chateau*, 90 Cal.App.4th at 347 (insurer could be liable for breach of contract but not bad faith). Further, Defendant explains, "Plaintiff offers a host of new allegations to support its new theories of liability, including that Allied "[d]eceptively or deliberately misrepresent[ed] its obligations," acted "[m]aliciously," and "[e]ngag[ed] in a pattern and practice of misconstruing the Policy's provisions." (D.I. 38 at 4 (citing D.I. 29-3 at ¶ 69).) "These are plainly not damages allegations," Defendant asserts. (*Id.*) Moreover, "Plaintiff's argument that the new claims are innocuously "Phase II" claims is also inapposite because there is no way for Plaintiff to recover damages unless and until Allied is found liable for the claims in the first place." (*Id.*)

---

viruses, bacteria, and similar organisms—following a legionella outbreak in 2014, and that the pollution policy covers pollution incidents which include the presence of a virus on, at or within business structures; id. at ¶ 45 (alleging Defendant failed to hire consultants or test any location, and denied coverage for each of the more than 500 business interruption claims); *id.* at ¶ 47 (adding contentions that (i) epidemiological experts agree viruses are ubiquitous, and (ii) that Defendant insisted on testing results demonstrating the presence of COVID-19 in the air or surfaces as a condition to coverage, despite the fact that no such testing existed at the time).

5

Regarding prejudice, Plaintiff asserts that "the amendments require no additional Phase I discovery, and any issues relating to the new claims will be handled in Phase II. Moreover, the Phase I trial remains more than a year away, and the Phase II schedule will be set only *after* Phase I concludes." (D.I. 30 at 3.) Defendant contends, on the other hand, that the proposed amendments are "highly prejudicial." (D.I. 38 at 5.) "The addition of new substantive allegations and two new claims will prejudice [Defendant]," it asserts, as "Plaintiff's proffered new claims, including a bad faith claim, were never part of the case and were not explored in discovery or litigated at any point over the past nearly five years." (D.I. 38 at 5.) "The parties tailored all discovery to the singular declaratory judgment claim, and Allied would be severely prejudiced if the parties were to proceed to trial on these new claims." (*Id.*) Finally, "Allied opposes re-opening and re-setting Phase I discovery, which would require extensive written discovery, additional depositions, additional expert disclosures on bad faith issues, and delay the Phase I trial, for the reasons explained herein." (*Id.* (citing *Spartan Concrete Prods., LLC v. Argos USVI, Corp.*, 929 F.3d 107, 117 (3d Cir. 2019) (affirming denial of leave to amend where new claims would require additional discovery).)

## IV.   DISCUSSION

"[A] party may amend its pleading only with . . . the court's leave. The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Third Circuit favors a liberal approach to amendment. *See Arthur v. Maersk, Inc.*, 434 F.3d 196, 202 (3d Cir. 2006); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990). Absent undue delay, bad faith, dilatory motive, futility, or unfair prejudice, leave to amend should be granted. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Leave is properly denied, however, where the "new claim[s] fundamentally alter the proceeding and could have been asserted earlier." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 276 (3d Cir. 2001).

Defendant first challenges the addition of "numerous new substantive factual allegations." (*See* D.I. 38 at 3 (citing New Factual Allegations at ¶¶ 31, 33-34, 37-39, 43-45, 47.) The New Factual Allegations set forth in the factual background of the Complaint attempt to incorporate factual allegations drawn from discovery relevant to the Phase I issue of liability and insurance coverage, including, primarily statements from Defendants' own expert(s). Defendant does not explain how such amendments are untimely and/or prejudice Defendant.

The New Causes of Action, asserting new theories of liability, should have been asserted earlier. This case has been pending for nearly five years and fact discovery closed in October 2022 — nearly three years ago. Also, in November 2024, Plaintiff sought to unwind the bifurcated structure to amend its Complaint, obtain damages discovery, and consolidate the proceeding into a single trial. Importantly, the Bankruptcy Court denied the request to modify the Bankruptcy Scheduling Order, noting that the matter "has been hanging out there for four years" and that "Allied would be prejudiced by . . . open[ing] up discovery. (Adv. D.I. 343 at 13:8-14:7.) Further, despite telling the Bankruptcy Court in November 2024 that it intended to amend its Complaint, Plaintiff did not file a motion to amend in the Bankruptcy Court and did not file the instant motion to amend until July 2025. Moreover, Plaintiff's argument that the new claims are Phase II claims is flawed because the new claims are entirely new liability claims as opposed to new damages allegations—which "fundamentally alter the proceeding." *Cureton*, 252 F.3d at 276. In sum, the new claims and theories of liability could have been brought earlier and will fundamentally reshape the case. Based on prejudice to Defendant, Plaintiff's Motion to Amend the Complaint is denied solely with respect to the New Causes of Action. Plaintiff's Motion to Amend the Complaint is granted with respect to the remaining proposed amendments.

## V. CONCLUSION

For the following reasons, the Motion to Amend is granted in part and denied in part. An appropriate Order will follow.

_____
UNITED STATES DISTRICT JUDGE